IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| TRACY J. HENLEY, )<br>)<br>      Plaintiff, )<br>)<br>   v. )<br>)<br>LELAND DUDEK, Acting Commissioner )<br>of Social Security Administration,[1] )<br>)<br>      Defendant. ) | CV 124-089 |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff appeals the decision of the Acting Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **AFFIRMED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.     BACKGROUND**

Plaintiff protectively applied for SSI in September 2020,[2] and she alleged a disability onset date of August 28, 2018. Tr. ("R."), p. 251. Plaintiff was 48 in September 2020, and was 51 when

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the **CLERK** to substitute Leland Dudek, Acting Commission of Social Security Administration, as the proper Defendant.

[2] Plaintiff references September 23 as the application date while the ALJ and Commissioner reference September 8. The discrepancy is immaterial to the Court's analysis. See discussion *infra* Section III.A.

the Administrative Law Judge ("ALJ") issued the decision under consideration. R. 21-23, 251. Plaintiff alleges disabilities of anemia, depression, back disorder, fractured foot, carpal tunnel syndrome, peripheral artery disease, hypertension, and mild obesity. R. 12-13, 291. Plaintiff reported completing her GED, R. 292, 791, and prior to her alleged disability date accrued a history of past work as a babysitter, certified nursing assistant, housekeeper, and lead teacher. R. 280, 292.

The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. R. 136-70. Plaintiff requested a hearing before an ALJ, R. 189, and ALJ Christopher Daniels held a hearing on March 15, 2024, R. 36. Represented by counsel, Plaintiff appeared by phone and testified, as did a vocational expert ("VE"), Robert Brabham. R. 36-56. On April 11, 2024, the ALJ issued a decision finding Plaintiff not disabled. R. 10-23.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity (SGA) since September 8, 2020, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: Hemolytic anemia (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity ("RFC") to perform light work[3] as defined in 20 CFR 416.967(b) except that the claimant can

---

[3] "Light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or

      occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, push/pull the same as lift/carry, stand or walk 6 out of 8 hours, and sit 6 out of 8 hours. The claimant cannot climb ladders, ropes, or scaffolds, crawl, or have exposure to heights. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. The claimant can frequently handle and finger with the right upper extremity. The claimant can have no more than occasional exposure to extreme cold, vibration, fumes, odors, dusts, gases, poor ventilation, and dangerous moving machinery.

      The claimant has no past relevant work (20 CFR 416.965).

5. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969a).

      The claimant has not been under a disability, as defined in the Social Security Act, since September 8, 2020, the date the application was filed (20 CFR 416.920(g)).

R. 12-22.

When the Appeals Council denied Plaintiff's request for review of the ALJ's decision, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review, 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting an immediate award of benefits, and in the alternative, remand, arguing the RFC is not supported by substantial evidence, the hypothetical questions posed to the VE failed to include all Plaintiff's limitations and impairments, and the ALJ's decision failed to apply res judicata principles based on a prior ALJ denial. (See doc. no. 9, "Pl.'s Br.") The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence, the VE's testimony provides substantial evidence Plaintiff could perform

---

      she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.976(b).

3

other work, and the ALJ did not have to apply administrative *res judicata*. (See doc. no. 12, "Comm'r's Br.")

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards

other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.  DISCUSSION

Plaintiff presents three arguments why the ALJ erred in denying her application for benefits. See Pl.'s Br. Plaintiff argues the ALJ erred in formulating her RFC by not properly accounting for evidence of weakness in her right upper extremity. Id. at 9-14. Next, Plaintiff contends the hypothetical questions posed to the VE should have included limitations due to uterine fibroids, limited right upper extremity use, and depression. Id. at 16-18. Finally, Plaintiff claims the ALJ did not apply *res judicata* from a 2018 ALJ decision finding Plaintiff had an RFC to perform sedentary work, id. at 17-20, and she further references *res judicata* when discussing the RFC and VE questions, id. at 10-12, 17. For the reasons below, the Court finds the ALJ did not err and affirms the ALJ's decision.

#### A.   The ALJ Correctly Decided Not to Apply Administrative *Res Judicata*

Plaintiff contends the ALJ improperly ignored a prior 2018 unfavorable ALJ decision in which the ALJ concluded Plaintiff had the RFC to perform sedentary work. Id. at 17-20. Because she is now over the age of fifty, Plaintiff contends a sedentary RFC in this proceeding will trigger

5

a finding she is disabled as a matter of law pursuant to the Medical Vocational Guidelines Rule 201.014 ("the Grids"). Id. at 18. To support the *res judicata* argument, Plaintiff distinguishes Flowers v. Commissioner, Social Security Administration, in which the Eleventh Circuit concluded the claimant failed to show prejudice in the RFC change from sedentary to light work because the claimant was not entitled to disability benefits even with a sedentary RFC. 97 F.4th 1300, 1307 (11th Cir. 2024). Plaintiff also relies on Fourth and Sixth Circuit precedent, addressed in Flowers, which provides "absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." Id. at 19 (citing Drummond v. Comm'r of Soc. Sec., 126 F.3d 837 (6th Cir. 1997)); see also Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473 (4th Cir. 1999); Earley v. Comm'r of Soc. Sec., 893 F.3d 929 (6th Cir. 2018).

The Commissioner argues *res judicata* does not apply because the first ALJ considered disability for the time period of 2014 to 2018, whereas the second ALJ considered disability for the period of 2020 to 2024. Id. at 12-13. The Court agrees with the Commissioner.

Social Security regulations provide for application of *res judicata* when the Commissioner has "made a previous determination or decision . . . about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action . . . ." 20 C.F.R. § 416.1457(c)(1). Unlike the Fourth and Sixth Circuits, the Eleventh Circuit does not apply *res judicata* when the second proceeding concerns any period of time that was not considered in the first proceeding. Griffin v. Astrue, 560 F. App'x 837, 844 (11th Cir. 2014); Moreno v. Astrue, 366 F. App'x 23, 25 (11th Cir. 2010) (*per curiam*); Lucky v. Astrue, 331 F. App'x 634, 638 (11th Cir. 2009) (*per curiam*).

For example, in Moreno, the periods under review in the first and second proceedings

6

overlapped by three weeks from November 2, 2001, the onset date alleged in second application, through November 21, 2001, the date of the ALJ's denial in the first proceeding. Moreno, 366 F. App'x at 25-26. Despite this overlap, the Eleventh Circuit found *res judicata* did not apply because the second application "concerned an unadjudicated time period," and thus did not involve the "same facts or issues . . . ." Id. at 26-27.

Here, the *res judicata* argument is weaker than in Moreno because there is no overlap in the time periods of (1) February 28, 2014 to August 16, 2018; and (2) September 8, 2020[4] to April 11, 2024. R. 10-23; see also R. 249, 251. Accordingly, the two proceedings do not involve "the same facts and on the same issue or issues," and the ALJ did not err in declining to apply *res judicata*. 20 C.F.R. § 416.1457(c)(1); see also Brown v. O'Malley, CV 423-215, 2024 WL 4298793, at *2-3 (S.D. Ga. Sept. 26, 2024) (concluding *res judicata* did not apply in case where the periods under review for the earlier and later ALJ decisions differed by one day).

B.     **Formulating Plaintiff's RFC**

1.     **Step Four Framework for Formulating Plaintiff's RFC**

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do

---

[4] The ALJ's decision concluded Plaintiff had not been under a disability since September 8, 2020, the date she filed her application. R. 22; see also R. 249. In contrast, Plaintiff's brief cites to September 23, 2020, as the relevant application date. Pl.'s Br., p. 2; see also R. 251. Even if the Court uses September 23, 2020, as the operative application date, *res judicata* does not apply because there is no overlap between the relevant time periods. Thus, the outcome remains the same when using either date.

7

in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining whether a claimant can return to her past relevant work, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

An ALJ must also consider all of a claimant's impairments, severe and non-severe, in combination. Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (*per curiam*) (citing Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984)); see also 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."). As one of the Commissioner's policy interpretation rulings explains,

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.

8

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (July 2, 1996). That is, in combination with other limitations, a "not severe" impairment may prevent the return to past relevant work or narrow the range of other work that may still be available to a claimant. Id.

### 2. Plaintiff's RFC is Supported by Substantial Evidence

Plaintiff argues the ALJ erred when formulating Plaintiff's RFC by determining Plaintiff can perform light work with additional limitations because the record supports less than a light work RFC. Pl.'s Br., pp. 9-14. Specifically, Plaintiff challenges the RFC finding that she can frequently handle and finger with her right upper extremity and can push/pull the same as lift/carry. Id. at 10, 13. Instead, she asserts the record demonstrates she has "significant and severe" limitations on the use of her right upper extremity.[5] Id. at 13. Plaintiff supports this argument by citing to assessments performed by state agency medical consultants, Dr. Isaac Ravizee and Dr. Gary Smith, which limited Plaintiff's handling and fingering skills to "occasional," not frequent, and the fact that Plaintiff wore a hand brace on her right wrist at the hearing. Id. at 10, 13.

When formulating Plaintiff's RFC, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, push/pull the same as lift/carry, stand or walk 6 out of 8 hours, and sit 6 out of 8 hours. The claimant cannot climb ladders, ropes or scaffolds, crawl, or have exposure to heights. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. The claimant can frequently handle and finger with the right upper extremity. The claimant can have no more than occasional exposure to extreme cold, vibration, fumes, odors, dusts, gases, poor ventilation, and dangerous moving machinery.

R. 14.

---

[5] Plaintiff argues the ALJ erred by failing to consider the 2018 finding of a sedentary RFC. Because res judicata does not apply, the ALJ did not err. See Diaz v. Comm'r of Soc. Sec., CV 818-2330, 2020 WL 614643, at *4 (M.D. Fla. Feb. 10, 2020) ("[T]he ALJ . . . did not err in failing to consider the findings in the prior ALJ decision or in failing to defer to the previous RFC findings.").

The ALJ's decision described Plaintiff's hearing testimony about her right upper extremity, in relevant part:

> At the hearing, the claimant testified that she has . . . carpal tunnel that hurts her right hand and causes difficulty writing and holding things . . . . She testified that she uses a right-hand brace . . . . The claimant testified that she can only lift as much as a cell phone . . . .

R. 15.

After detailing this testimony, the ALJ explained he found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. He then described the record medical evidence in detail, noting instances where Plaintiff denied experiencing hand issues or otherwise had normal upper extremity findings. R. 15-18; see also, e.g., R. 411, 462, 699, 822. The ALJ also discussed two consultative examinations performed by Dr. Reginald Brown in September 2022 and August 2023. R. 17. The ALJ explained Dr. Brown's September 2022 examination revealed Plaintiff had "full range of motion and normal joints in the upper and lower extremities . . . normal grip strength, extremity strength, [and] muscle tone." R. 17 (citing R. 784-85). Ultimately, Dr. Brown found Plaintiff had a "largely unremarkable" exam and could perform work at the mild to moderate intensity level. Id. (citing R. 785). The ALJ then described Dr. Brown's August 2023 examination, which likewise revealed unremarkable findings despite Plaintiff's complaints of right-hand carpal tunnel syndrome and the fact that she wore a right wrist brace to the assessment, noting Plaintiff "maintained unremarkable . . . grip strength [and] muscle strength." Id. (citing R. 812).

Following this in-depth discussion, the ALJ summarized the relevant medical evidence by stating:

> The medical evidence, discussed above, shows that the claimant has a long history of anemia due in part to menstruation with conservative treatment with supplemental iron with generally good improvement. However, it also shows that the claimant occasionally complained of anemia-related symptoms like dizziness, lightheadedness, weakness, and fatigue, that were often associated with not taking supplemental iron, and corresponded to reduced hemoglobin and iron levels on blood testing and required additional treatment with blood transfusions. However, the vast majority of treatment notes do not reflect any such symptom complaints. *Moreover, the notes did not reflect any significant complaints of back, hand, or foot pain or swelling.* The physical examinations also *confirmed generally unremarkable function with normal strength*, sensation, gait, coordination, and cardiovascular function without edema or swelling and only some mild obesity and occasionally elevated blood pressure. . . . Thus, while the medical evidence supports the claimant's allegations of occasional symptoms like dizziness, lightheadedness, weakness, fatigue, or pain, it does not support the claimant's allegations of disabling symptoms and limitations.

R. 18 (emphasis added).

In consideration of all of Plaintiff's symptoms and impairments, the ALJ concluded:

> [T]he claimant is only able to perform light work with no climbing ladders, ropes or scaffolds, crawling, or having exposure to heights and occasional climbing ramps and stairs, balancing, stooping, kneeling, and crouching. *To further account for the claimant's carpal tunnel syndrome, the undersigned finds that the claimant can frequently handle and finger with the right upper extremity. In an abundance of caution, and to avoid any symptom exacerbation, the undersigned finds that the claimant can have no more than occasional exposure to extreme cold, vibration, fumes, odors, dusts, gases, poor ventilation, and dangerous moving machinery.*

R. 18-19 (emphasis added).

The ALJ also considered assessments performed by Dr. Isaac Ravizee and Dr. Gary Smith, the state agency medical consultants, and was "generally persuaded" by their findings. R. 19. The ALJ stated:

> The undersigned is generally persuaded by the assessments of the State agency medical consultants, Dr. Isaac Ravizee and Dr. Gary Smith, finding that the claimant has severe anemia due to uterine issues and non-severe carpal tunnel syndrome and hypertension with the ability to perform light work with occasional right upper extremity pushing/pulling, handling, and fingering, no climbing ladders, ropes, or scaffolds or crawling, occasional other postural maneuvers, and avoidance of concentrated exposure to extreme cold, vibrations, pulmonary

11

irritants, and hazards. Dr. Ravizee and Dr. Smith provided good internal support for their assessments with detailed and thorough discussions of the evidence that they relied upon in determining these limitations, which provide significant probative value. Their assessments are also mostly consistent with that evidence and the subsequent evidence received at the hearing level showing the claimant's occasional complaints of lightheadedness, dizziness, weakness, or fatigue due to anemia with fluctuating hemoglobin and iron levels requiring medication and occasional transfusions, as well as the claimant's occasional complaints of back pain and longitudinal treatment for hypertension, but with largely unremarkable function on longitudinal examinations. Thus, the undersigned is persuaded that the claimant can only perform light work with no climbing ladders, ropes, or scaffolds or crawling and occasional other postural maneuvers and avoidance of concentrated exposure to extreme cold, vibrations, pulmonary irritants, and hazards. However, in consideration of the claimant's anemia symptoms, the undersigned finds that the claimant should never have exposure to heights as a precaution. *Additionally, in consideration of the evidence showing that the claimant had full upper extremity strength and range of motion, as well as full hand grip strength and sensation on repeat consultative evaluations, the undersigned finds that the claimant is able to push and pull without limitation and frequently handle and finger with the right upper extremity*. Thus, the undersigned finds these assessments generally persuasive with only modest deviation.

R. 19 (citing R. 136-59, R. 161-70) (emphasis added).

As described, the ALJ acknowledged Dr. Ravizee and Dr. Smith's determination that Plaintiff had the ability to perform "light work with occasional right upper extremity pushing/pulling, handling, and fingering." R. 19. However, he concluded Plaintiff had the ability to push/pull without limitation and frequently handle and finger with the right upper extremity in light of the findings in Dr. Brown's consultative examinations, which revealed Plaintiff had full upper extremity strength, grip strength, and range of motion. Id. Although the ALJ found Dr. Brown's examinations "minimally persuasive," he nonetheless found persuasive the findings that Plaintiff had "some work-related limitations." R. 19-20.

To start, finding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC. The RFC "is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive." Beegle v. Soc. Sec.

12

Admin., Com'r, 482 F. App'x 483, 486 (11th Cir. 2012); Nichols v. Kijakazi, No. 320-CV-224, 2021 WL 4476658, at *8 (M.D. Ala. Sept. 29, 2021) ("The ALJ was under no obligation to adopt verbatim all of [the doctor's] limitations into the RFC.")  Indeed, per the regulations, the ALJ cannot defer or give any specific evidentiary weight to any medical opinion.  20 C.F.R. § 416.920c(a).  Instead, the ALJ is to examine the persuasiveness of medical opinions and formulate an RFC that is supported by substantial evidence.  Plaintiff contends the ALJ erred in finding Plaintiff could frequently use her right upper extremity because the state agency medical consultants determined Plaintiff could only occasionally perform these functions.  Pl.'s Br., pp. 10, 13.  In other words, Plaintiff argues the RFC should have contained more restrictive limitations on her upper extremity functioning because the state agency medical consultants found greater restrictions.  Id.

Plaintiff's argument fails because the ALJ was not required to fully incorporate this opinion into Plaintiff's RFC, and the ALJ explained he found greater restrictions unwarranted in light of Dr. Brown's examinations, which revealed Plaintiff had normal upper right extremity functioning. R. 19.  The ALJ properly addressed Dr. Ravizee and Dr. Smith's opinions and appropriately considered the factors required by 20 C.F.R. § 416.920c(c).  See R. 19.  The error described is only that the ALJ's subsequent RFC determination was not as restrictive as Plaintiff believes Dr. Ravizee and Dr. Smith's opinions require.[6]

The Court finds the RFC is supported by substantial evidence.  The ALJ examined evidence from various medical providers and consultative examiners, including Dr. Ravizee and

---

[6] Interestingly, although Dr. Smith's assessment concluded Plaintiff should be limited to occasional handling and fingering skills, the evaluation also revealed Plaintiff had 5/5 motor strength in the left and right upper extremities and 5/5 grip strength on the right and left. R. 168, 380-81

13

Dr. Smith, as well as Plaintiff's own testimony showing she was "able to perform essentially all activities of daily living independently." R. 18, 43, 49. Regarding Plaintiff's upper right extremity, although the record evidence supports Plaintiff had previously complained of wrist pain,[7] R. 398, 599, and although she wore a brace on her right wrist at the hearing, R. 46, 48, the ALJ's decision points to contradictory record evidence in which Plaintiff had normal hand and wrist functioning despite her complaints, R. 412, 604, 650, 699, 784, 812, 815, 822. That evidence, as well as the record as a whole, provided support for the ALJ's determination that Plaintiff had no push/pull restrictions and could frequently handle and finger with the right upper extremity.

The record evidence provides substantial support for the RFC. The ALJ did not find Plaintiff could perform all ranges of work with *no* limitations. The ALJ instead included several exertional limitations in the RFC that specifically relate to functional limitation evidence before the ALJ. The RFC precludes Plaintiff from climbing ladders, ropes or scaffolds, crawling, or having exposure to heights. R. 14. The RFC further limits Plaintiff to occasionally climbing ramps and stairs, balancing, stopping, kneeling, and crouching. Id. Although the RFC provides Plaintiff can frequently handle and finger with the right upper extremity, the ALJ limited Plaintiff's RFC to no more than occasional exposure to extreme cold, vibration, fumes, odors, dusts, gases, poor ventilation, and danger moving machinery to avoid symptom exacerbation for Plaintiff's carpal tunnel syndrome. R. 14, 18-19. There is substantial evidence supporting each of these limitations.

Although Plaintiff maintains the RFC does not properly account for limitations on her right upper extremity use, as explained, the ALJ does not have to wholly accept a medical opinion "and incorporate into his RFC assessment any and all limitations that source suggests" merely because

---

[7] These medical records reveal Plaintiff complained of left wrist pain. R. 398, 599.

the ALJ finds that opinion persuasive. K.T.B. v. Comm'r of Soc. Sec., No. 320-CV-110, 2021 WL 5906372, at *2 (M.D. Ga. Dec. 14, 2021); see also Vilches v. Kijakazi, No. 321-CV-015, 2022 WL 11455775, at *4 (M.D. Ala. Oct. 19, 2022) ("There is no requirement that an ALJ include every limitation from a medical opinion verbatim in an RFC determination."). This is particularly the case where the ALJ merely found Dr. Ravizee and Dr. Smith's assessments "generally persuasive." See Vilches, 2022 WL 11455775, at *3 n.2 ("The ALJ need not adopt every part of an opinion that the ALJ finds generally persuasive."). As described, other record evidence belies findings that Plaintiff experiences significant limitations regarding the use of her right upper extremities. Moreover, Plaintiff's RFC is not in direct conflict with the Dr. Smith or Dr. Ravizee's assessments. Compare Weidlich v. Comm'r of Soc. Sec., 2023 WL 8015753 (11th Cir. Nov. 20, 2023) (*per curiam*) (finding reversible error where the RFC directly contradicted assessment the ALJ found generally persuasive, and the ALJ did not explain the inconsistency).

All in all, the RFC is consistent with the record evidence. While one could credit the evidence differently to justify adding further limitations in the RFC, that is not the province of the Court. The Court's job is not to review the administrative record *de novo*, but rather is to review the record for substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant. See Crawford, 363 F.3d at 1158-59; Moore, 405 F.3d at 1211. The RFC here is supported by substantial evidence.

### C.     The ALJ Properly Relied on the Testimony of the VE

Plaintiff contends the ALJ's reliance on the VE's testimony is not supported by substantial evidence because the ALJ did not include all of Plaintiff's severe and non-severe physical and mental impairments. Plaintiff argues that because the hypothetical upon which

15

the ALJ relied did not include these impairments, the VE's testimony cannot support the ALJ's decision Plaintiff could perform light work as a gate attendant, production inspector, or sorter.[8] Pl.'s Br., pp. 14-17. Specifically, Plaintiff asserts the ALJ erred by not asking hypothetical questions to the VE that incorporated limitations from Plaintiff's uterine fibroids, carpal tunnel syndrome, and depression. Id. at 15-17.

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985). "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question [to the VE] that accounts for all of the claimant's impairments." Barchard v. Comm'r of Soc. Sec., 628 F. App'x 685, 687 (11th Cir. 2015) (*per curiam*) (citation omitted); see also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (same). However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

As discussed above, the ALJ's decision to not incorporate into the RFC the more restrictive limitations regarding Plaintiff's right upper extremity was supported by substantial evidence.

---

[8] The ALJ's decision noted the sorter job requires frequent stooping and crouching, while Plaintiff's RFC was limited to occasional stooping and crouching. R. 22. Nonetheless, the ALJ accepted the VE's testimony that an individual with Plaintiff's RFC could perform work as a sorter. Id. The ALJ then explained that to the extent this job was unavailable to someone with Plaintiff's RFC, the gate attendant and production inspector jobs nonetheless "remain available in significant numbers in the national economy." Id.

Thus, the ALJ did not have to incorporate these restrictions into the hypotheticals presented to the VE.  See Crawford, 363 F.3d at 1161.

Regarding Plaintiff's uterine fibroids, Plaintiff argues her hearing testimony established this condition caused her to experience significant impairments, which would in turn lead to excessive absences and frequent breaks at work.  Pl.'s Br., pp. 15-16.  Plaintiff also challenges the ALJ's failure to elaborate on Plaintiff's decision not to have a hysterectomy to address her uterine issues.  Id. at 16.  At the hearing, Plaintiff testified she experiences uterine fibroid problems every month, and during this period, she would be unable to function or otherwise work as a result.  R. 48.  Plaintiff's testimony further revealed her decision not to have a hysterectomy was a personal decision, but that she nonetheless deals with "a lot of issues" due to her uterine fibroids.  R. 48; see also R. 156.

The ALJ assessed Plaintiff's hearing testimony in light of the record evidence and determined Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  R. 15.  The ALJ flagged records in which symptoms related to Plaintiff's uterine issues were not as severe as her hearing testimony suggested.  For example, the ALJ pointed to primary care treatment notes through mid-2022, which reflected Plaintiff's symptoms lessened by using supplemental iron medication, R. 16 (citing R. 697, 738, 770), and November 2023 primary care notes illustrated "she did not complaint of any anemia-related symptoms," R. 17 (citing R. 822).

Ultimately, in summarizing the relevant medical record evidence, the ALJ explained that although the evidence showed Plaintiff "has a long history of anemia" and that she "occasionally complained of anemia-related symptoms like dizziness, lightheadedness, weakness, and fatigue," such symptoms "were often associated with not taking supplemental iron" and that "the vast

17

majority of treatment notes do not reflect any such symptom complaints." R. 18. The ALJ also discussed records of Plaintiff's blood transfusions and blood testing. Id. The ALJ noted the evidence revealed her uterine probelms showed "generally good improvement" in response to "conservative treatment with supplemental iron." Id. The ALJ also explained:

> [T]he claimant primarily received only conservative treatment from her primary care provider primarily with medications for hypertension and anemia without reported side effects, as well as topical gel for pain and recommendations for dietary and exercise modifications, with only a few episodes of emergent treatment for blood transfusions. She also declined to undergo hysterectomy to address anemia and uterine issues. Thus, while the medical evidence supports the claimant's allegations of occasional symptoms like dizziness, lightheadedness, weakness, fatigue, or pain, it does not support the claimant's allegations of disabling symptoms and limitations.

R. 18.

Additionally, in citing to Plaintiff's hearing testimony, function reports, and consultative exams, the ALJ also noted:

> [Plaintiff] confirmed that she is able to perform essentially all activities of daily living independently, like live alone, perform personal care and take medications without reminders, prepare daily meals, do laundry, use public transportation, go places alone, shop in stores for foods, watch television, listen to the radio, go to church three days per week, attend appointments, get along with others, and handle changes in routine, which is relatively inconsistent with her allegations of total disability.

R. 18.

Based on the foregoing, the ALJ articulated, "while the record is clear that the claimant has some symptoms related to her conditions, including occasional dizziness, lightheadedness, weakness, or fatigue and pain, it does not support claimant's allegations of further limitations." Id. Accordingly, because the ALJ properly discredited Plaintiff's complaints about experiencing significant limitations from her uterine fibroid problems, including the severity of her symptoms and the extent to which they would impact her ability to work, the hypothetical questions posed to

the VE need not have incorporated any greater limitations or restrictions. See Crawford, 363 F.3d at 1161. Accordingly, the hypothetical questions accurately accounted for Plaintiff's limitations stemming from her uterine issues, as reflected in the RFC.

Plaintiff's argument the ALJ should have incorporated her depression into his hypothetical questions to the VE also fails because the ALJ properly found no significant limitations stemmed from this mental impairment. The ALJ determined Plaintiff had the medically determinable non-severe impairment of depression, and further explained that when considered "singly and in combination," Plaintiff's depression "do[es] not cause more than a minimal limitation in [her] ability to perform basic mental work activities." R. 13. The ALJ then discussed the record evidence revealing Plaintiff's depression was mild and had no more than mild limitations on her ability to perform work-related activities. R. 13, 20 (citing R. 791-96). Accordingly, the ALJ did not need to include Plaintiff's depression in the hypothetical questions posed to the VE because the ALJ found her depression did not cause any work-related limitations, and this finding is supported by substantial evidence. See Burnham v. Berryhill, No. 16-CV-63013, 2018 WL 1709714, at *6, *12 (S.D. Fla. Mar. 7, 2018) (concluding ALJ did not need to ask VE hypothetical questions that included non-severe impairments previously determined to not cause a more than minimal limitation on plaintiff's ability to work).

The characteristics of the person in the hypothetical presented by the ALJ to the VE, and relied upon by the ALJ to conclude Plaintiff was not disabled, incorporated the supported restrictions in Plaintiff's RFC, including limitations to: (1) climbing ladders, ropes, or scaffolds, crawling, or having exposure to heights, (2) occasionally climbing ramps and stairs, balancing, stooping, kneeling, and crouching, and (3) no more than occasional exposure to extreme cold, vibration, fumes, odors, dusts, gases, poor ventilation, and dangerous moving machinery. R.

14. The restrictions for which Plaintiff argues were not required to be included in the RFC and thus the ALJ did not have to include those limitations in the hypothetical to make the disability determination. See Borges v. Comm'r of Soc. Sec., 771 F. App'x 878, 883 (11th Cir. 2019) (*per curiam*).   In sum, because the hypothetical presented to the VE, upon which the ALJ relied to find Plaintiff was not disabled, accurately and comprehensively reflected Plaintiff's characteristics as determined by the ALJ in formulating the RFC, the ALJ's reliance on the VE testimony was proper. See McSwain, 814 F.2d at 619-20; Pendley, 767 F.2d at 1562-63.

### IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **AFFIRMED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 21st day of March, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA